# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Angela Kay Shambour,

                                                    Civ. No. 14-566 (RHK/LIB)
                            Plaintiff,              **MEMORANDUM OPINION**
v.                                                  **AND ORDER**

Carver County, et al.,

                            Defendants.

Jonathon A. Strauss, Kenneth H. Fukuda, Lorenz F. Fett, Jr., Sonia L. Miller-Van Oort, Sapientia Law Group, Minneapolis, Minnesota, for Plaintiff.

Margaret A. Skelton, Erin E. Benson, Timothy A. Sullivan, Ratwik, Roszak & Maloney, PA, Minneapolis, Minnesota, for Defendants Carver County and Rice County.

Jon K. Iverson, Stephanie A. Angolkar, Susan M. Tindal, Iverson Reuvers Condon, Bloomington, Minnesota, for Defendants Cities of Cottage Grove, Dundas, Farmington, Lonsdale, Northfield, and West St. Paul.

Kimberly R. Parker, Robert B. Roche, Ramsey County Attorney's Office, St. Paul, Minnesota, for Defendant Ramsey County.

Cheri M. Sisk, City of St. Paul Attorney's Office, St. Paul, Minnesota, for Defendant City of St. Paul.

Oliver J. Larson, Minnesota Attorney General's Office, St. Paul, Minnesota, for Defendants Michael Campion and Ramona Dohman.

# INTRODUCTION

In this action, Plaintiff Angela Shambour ("Shambour") alleges numerous

government employees and the cities and counties employing them violated her statutory,

constitutional, and common-law privacy rights by accessing or allowing access to her

Driver and Vehicle Services ("DVS") records.  Defendants now move to dismiss

Shambour's claims or, alternatively, to sever them; for the following reasons, their

Motions will be granted in part.[1]

## BACKGROUND

Shambour alleges the following facts in her First Amended Complaint.

Shambour was a law-enforcement officer with the Northfield Police Department

from 1992 until 1998, and has been an Assistant County Attorney in St. Louis County,

Minnesota, since 2000.  In 2013, Shambour requested and received an audit report by the

Department of Public Safety ("DPS"), where she discovered that her DVS records were

accessed fifty-nine times by individuals at law-enforcement and other agencies across

Minnesota between 2003 and 2011.

In response to the audit report, Shambour filed this action on February 28, 2014,

against the unknown individuals who accessed her information ("Individual Defendants")

and their supervisors ("Supervisor Defendants"); the cities and counties who employed

the Individual Defendants at the time of the alleged accesses ("Entity Defendants");

Mona Dohman and Michael Campion ("Commissioner Defendants"), acting in their

individual capacities as Commissioners of DPS between 2003 and 2011; and unidentified

officers, supervisors, employees, staff, independent contractors, and agents of DPS

("DPS Does").

 In her Complaint, Shambour alleges that her records could not have been accessed

for legitimate law-enforcement purposes because she was never charged with or

---

[1] The Motions to Dismiss will be granted as to the named Defendants but denied to the extent the
named Defendants purport to move on behalf of certain John or Jane Doe Defendants (who will
remain) and to the extent they seek to sever Shambour's claims.

suspected of committing a crime during the relevant time period, nor was she stopped for a traffic violation. Shambour also asserts that her motor-vehicle records were accessed through searches by name rather than by driver's license number, further suggesting that her records were viewed for a purpose unrelated to law enforcement or traffic safety. Shambour alleges that her appearance has "changed noticeably" since 1998 (Compl. ¶ 38), and hypothesizes that individuals may have viewed her driver's license information out of romantic attraction or curiosity related to this change. DVS records such as those accessed generally contain information about physical appearance, including a color photograph, height, weight, and eye color, as well as a home address, date of birth, driver identification number, and possibly social security and donor information.

In her Complaint, Shambour asserts five claims: violations of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721-2725, against all Defendants (Count I); violations of 42 U.S.C. § 1983 against Individual Defendants (Count II), Entity Defendants and Supervisor Defendants (Count III), and Commissioner Defendants and DPS Does (Count IV); and an invasion of privacy under Minnesota common law against all Defendants (Count V).

## STANDARD OF DECISION

The Supreme Court set forth the standard for evaluating a motion to dismiss in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 547. A "formulaic recitation of the elements of a cause of action" will not suffice. Id. at 555. "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).

When reviewing a motion to dismiss, the Court "must accept [the] plaintiff's specific factual allegations as true but [need] not . . . accept a plaintiff's legal conclusions." Brown v. Medtronic, Inc., 628 F.3d 451, 459 (8th Cir. 2010) (citing Twombly, 550 U.S. at 556). The complaint must be construed liberally, and any allegations or reasonable inferences arising therefrom must be interpreted in the light most favorable to the plaintiff. Twombly, 550 U.S. at 554–56. A complaint should not be dismissed simply because the Court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. Id. at 556. Accordingly, a well-pleaded complaint will survive a motion to dismiss even if it appears that recovery is very remote and unlikely. Id. "Finally, the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).

## ANALYSIS

### I. DPPA Claims

The DPPA is a federal statute restricting the use and distribution of personal information contained in motor-vehicle records. The statute was enacted in 1994 in response to growing concern about the potential for abuse of such information. One catalyst for its enactment was the 1989 murder of actress Rebecca Schaeffer, whose stalker obtained her unlisted home address through the California Department of Motor

Vehicles.  Maureen Maginnis, *Maintaining the Privacy of Personal Information: The DPPA and the Right of Privacy*, 51 S.C. L. REV. 807, 809 (2000).  The DPPA outlines fourteen permissible purposes for which government employees may access motor-vehicle records, including, for example, law-enforcement purposes.  Any access for a purpose *not* enumerated by the statute constitutes a violation of the DPPA.  18 U.S.C. §§ 2721(b), 2722(a).

Asserting the private right of action provided by the DPPA, Shambour claims that all Defendants violated the DPPA by accessing or allowing access to her motor-vehicle records for purposes unrelated to law enforcement.  For the reasons that follow, the Court will dismiss all Shambour's DPPA claims except those asserted against Individual Defendants.

A. *Claims Against Commissioner, Supervisor, and Entity Defendants and DPS Does*

The DPPA declares that "[i]t shall be unlawful for any person[2] knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title."  18 U.S.C. § 2722(a).  Shambour asserts that DPS Does, Commissioners, Supervisors, and Entity Defendants disclosed her records in violation of the DPPA by allowing the Individual Defendants to access them.  These Defendants argue Shambour has failed to allege their disclosures were for an impermissible purpose and the Court agrees.

---

[1] The DPPA defines "person" to include organizations and entities, though not State agencies. 18 U.S.C. § 2725(2).

The language of the DPPA is clear: to violate the statute, a defendant must have acted with an impermissible purpose. Shambour, however, does not allege that the Commissioners, Supervisors, DPS Does, or Entity Defendants *themselves* acted with such a purpose. Instead, Shambour alleges these Defendants violated the DPPA by allowing law-enforcement officers access to her records, and that such access opened the door for abuse by the officers. Providing access to motor-vehicle records for law-enforcement purposes, however, is expressly allowed by the DPPA. Id. § 2721(b)(1). And Shambour has not alleged any facts indicating law-enforcement officers were given access to DVS records for any other reason. In the absence of any factual allegations to the contrary, the only reasonable inference to be drawn is that these Defendants provided law-enforcement officers with access to the DVS database for the purpose of carrying out their jobs, which is permitted under the DPPA. See id. Accordingly, Shambour's DPPA claims against these Defendants will be dismissed.

   B. *Claims Against Individual Defendants*

Individual Defendants argue that Shambour's DPPA claims against them should also be dismissed for failure to state a claim because (1) they did not "obtain" or "disclose" Shambour's personal information by accessing her DVS records, and (2) Shambour has not alleged sufficient facts to support her allegations of impermissible purpose.

First, Individual Defendants argue that by merely viewing DVS records, they did not "obtain" or "disclose" Shambour's personal information, as required to violate the DPPA. This argument is a nonstarter, as this Court has previously held that "information

- 6 -

may be 'obtained' simply through viewing" it.  Nelson v. Jesson, Civ. No. 13-340, 2013

WL 5888235, at *8 (D. Minn. Nov. 1, 2013) (Kyle, J.); see also Smythe v. City of

Onamia, Civ. No. 12-3149, 2013 WL 2443849, at *6 (D. Minn. June 5, 2013) ("[S]imply

retrieving records without a permitted purpose is a violation" of the DPPA.).

Second, Individual Defendants argue that Shambour's claims must be dismissed

for failing to allege facts supporting a plausible inference that they accessed her

information for an impermissible purpose.  They argue she has provided only a

"[t]hreadbare recital[] of the elements of [her] cause of action" and "mere conclusory

statements," which do not suffice.  Iqbal, 556 U.S. at 678.  To the contrary, Shambour

alleges specific facts that, taken together, create a plausible claim that her information

was not accessed for law-enforcement or other government purposes.

The Complaint alleges Shambour's records were searched fifty-nine times

between 2003 and 2011 despite her never having been pulled over for a traffic violation,

charged with a crime, suspected of a crime, or involved in any kind of civil or arbitral

proceeding during this period.  It is difficult, then, to imagine a permissible purpose

warranting such a high volume of searches.  While the number of searches alone might

not be sufficient to state a claim, see, e.g., Bass v. Anoka Cnty., Civ. No. 13-860, 2014

WL 683969, at *3 (D. Minn. Feb. 21, 2014) (court would not infer impermissible purpose

based "solely [on] number of times defendants allegedly accessed the [plaintiff's]

record"); McDonough v. Al's Auto Sales, Inc., Civ. No. 13-1889, 2014 WL 683998, at

*3 (D. Minn. Feb. 21, 2014) (same), some of the searches were also conducted at odd

hours of the night, which further suggests impermissible use, see Roschen v. Wabasha

Cnty., Civ No. 13-2490, slip. op. at 17 (D. Minn. June 26, 2014) (allegations of
impermissible purposes insufficient because plaintiffs did not allege that searches were
made at odd hours or by name).  Additionally, although Shambour is not a celebrity, her
employment as a Northfield law-enforcement officer and Assistant St. Louis County
Attorney make her reasonably well-known in those communities, and could account for
why officers would want to access her information.  Most telling is that each search for
her records was conducted by name rather than by license plate number.  See id.
Together, these facts support a reasonable inference that her records were accessed in
violation of the DPPA. Cf. Kampschroer v. Anoka Cnty., Civ. No. 13-2512, 2014 WL
3013101, at *9 (D. Minn. July 3, 2014) (plaintiffs alleged impermissible purpose where
their collective searches numbered over 1000, searches were by name, plaintiffs were
local media personalities and were not suspected in any law-enforcement matters);
Mallak v. Aitkin Cnty., Civ. No. 13-2119, 2014 WL 1285807, at *10 (D. Minn. Mar. 31,
2014) (plaintiff alleged impermissible purpose where searches were made by name, the
plaintiff was a well-known attorney in her community, and searches were conducted
early in the morning); but cf. Ray v. Anoka Cnty., Civ. No. 14-539, 2014 WL 2511087,
at *5 (D. Minn. June 4, 2014); Mitchell v. Aitkin Cnty., Civ. No. 13-2167, 2014 WL
835129, at *9 (D. Minn. Mar. 31, 2014).[3]

---

[3] Defendants also argue they are entitled to a presumption of regularity, citing United States v.
Chemical Foundation, 272 U.S. 1, 15 (1926), and that such presumption merits dismissal of
Shambour's claims.  This presumption applies to the "official acts of public officers" and
provides that, "in the absence of evidence to the contrary," courts will "presume that [public
officers] have discharged their official duties."  Id. at 14–15.  While the Court doubts whether

*C.  Statute of Limitations*

Defendants assert that many of the DPPA claims are time-barred.  Both parties agree the applicable statute of limitations is 28 U.S.C. § 1658, which provides:  "Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues."  The parties do not agree, however, on *when* a cause of action accrues under the DPPA.  Shambour argues her cause of action accrued when she discovered or reasonably should have discovered the violations.  Conversely, Defendants argue it accrued when the alleged violations occurred, in other words, when Shambour's records were accessed.

Other judges in this District have addressed the issue and unanimously concluded that a cause of action under the DPPA accrues when the violation occurs, and not, as Shambour argues, upon its discovery.  Ray, 2014 WL 2511087, at *3; Mitchell, 2014 WL 835129, at *4; Potocnik v. Carlson, Civ. No. 14-2093, 2014 WL 1206403, at *8–12 (D. Minn. Mar. 24, 2014); Bass, 2014 WL 683969, at *2; Rasmusson v. Chisago Cnty., Civ. No. 12-632, 2014 WL 107067, at *11–14 (D. Minn. Jan. 10, 2014).  While Eighth Circuit law generally favors the "discovery rule" in federal-question cases such as this, the Court agrees with Potocnik that—given recent Supreme Court precedent and the nature of DPPA claims—the "occurrence rule" applies instead.  2014 WL 1206403, at *11–12 (discussing Gabelli v. SEC, __ U.S. __, 133 S. Ct. 1216, 1223 (2013) and TRW Inc. v.

---

this presumption applies to the instant case at all, it certainly does not merit dismissing the case before Shambour has had an opportunity to discover "evidence to the contrary."

Andrews, 534 U.S. 19, 23 (2001)).  Accordingly, the Court will dismiss Shambour's

DPPA claims based on alleged violations occurring before February 28, 2010.

## II.     Section 1983 Claims

Shambour asserts claims under 42 U.S.C. § 1983, alleging that Defendants

violated her right to privacy as secured by the DPPA and by the Fourth and Fourteenth

Amendments of the U.S. Constitution.  In Nelson, the undersigned addressed this same

issue of whether § 1983 provides a remedy for allegedly unlawful accesses of motor-

vehicle records and the Court concluded it does not.  2013 WL 5888235, at *3–7.

Shambour has presented no additional allegations or arguments here that persuade the

Court its prior ruling was erroneous or does not apply.  Accordingly, her § 1983 claims

will be dismissed.  See also Kampschroer, 2014 WL 3013101, at *11–12; Kiminski v.

Hunt, Civ. No. 13-185 et al., 2013 WL 6872425, at *10–14 (Sept. 20, 2013); Bass, 2014

WL 683969, at *6–7; Mallak, 2014 WL 1285807, at *10–11.[4]

## III.    Common-Law Invasion of Privacy

Lastly, Shambour asserts a common-law claim of invasion of privacy against all

Defendants, claiming that Defendants' accessing or allowing access to her DVS records

intruded upon her seclusion.  Once again, the Court considered this same issue in Nelson

and concluded the facts alleged did not state a claim for common-law invasion of

privacy.  Id. at *8.  And once again, Shambour has presented no additional allegations or

arguments that persuade the Court to abandon its prior ruling, so her claim will be

---

[4] Defendants also argue they are entitled to qualified immunity, but as the Court will dismiss
Shambour's § 1983 claims on other grounds, it need not address this argument.

dismissed.  See also Rasmussen, 2014 WL 107067, at *10; Bass, 2014 WL 683969, at *7;

Mallak, 2014 WL 1285807, at *14.

## IV.    Severance of Claims

Entity Defendants move to sever all remaining claims from one another,

effectively isolating each allegation of an improper look-up.  Federal Rule of Civil

Procedure 20 provides:

> All persons ... may be joined in one action as defendants if there is asserted
> against them jointly, severally, or in the alternative, any right to relief in
> respect of or arising out of the same transactions, occurrences, or series of
> transactions or occurrences and if any question of law or fact common to all
> defendants will arise in the action.

Entity Defendants argue that because Shambour does not allege any joint action or

collaboration among Defendants, the Court should sever her claims into multiple

actions—one per alleged violation.  In support, they cite Movie Systems, Inc. v. Abel, 99

F.R.D. 129, 130 (D. Minn. 1983), which refused to allow a plaintiff to join claims against

almost two thousand defendants accused of pirating microwave signals, where no concert

of action was alleged.  Movie Systems reasoned that Rule 20 allows joinder where a right

to relief against all defendants arises from the *same* transaction, not merely *similar*

transactions.  Id.

But the Eighth Circuit and the U.S. Supreme Court have encouraged a broad

reading of Rule 20 and the term "transaction," in the interests of convenience and

efficiency.  See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966) ("[T]he

impulse is toward entertaining the broadest possible scope of action consistent with

fairness to the parties; joinder . . . is strongly encouraged."); Moore v. N.Y. Cotton Exch.,

270 U.S. 593, 610 (1926) ("'Transaction' is a word of flexible meaning.  It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship."); Mosley v. Gen. Motors, 497 F.2d 1330, 1332–33 (8th Cir. 1974) ("The purpose of [Rule 20] is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.").  In Mosley, the Eighth Circuit permitted joinder of claims and parties where the defendants' individual actions served to further a system of discrimination, even though plaintiff had not alleged they acted in concert.  Id. at 1333–34 ("[A] company-wide policy purportedly designed to discriminate against blacks in employment similarly arises out of the same series of transactions or occurrences."); see also United States v. Mississippi, 380 U.S. 128, 142 (1965) (joinder of defendants was proper under Rule 20 because each defendant acted as part of a state-wide system of discrimination).

    In the matter at hand, joinder is proper because the alleged acts similarly support a larger allegation of a systemic problem and the Court is persuaded that keeping Shambour's claims together is not only permissible but preferable.  As the allegations against Defendants share many common issues of law and fact, litigating them jointly serves the interest of judicial economy while minimizing delay, inconvenience, and expense overall.  See Fed. R. Civ. P. 1 ("[The Rules of Civil Procedure] should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding.")  It is therefore in the Court's and Shambour's best interests to litigate the claims in a single action, rather than create nine new actions, and

- 12 -

the Court cannot discern any real prejudice or unfairness to Defendants as a result.  As such, the Court declines to sever Shambour's claims.  See Mosley, 497 F.2d at 1332 ("[T]he scope of a civil action is . . . a matter for the discretion of the district court.").

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that the Motions to Dismiss (Doc. Nos. 13, 19, 25, 27, 33, 47) are **DENIED IN PART** to the extent they seek to sever Shambour's claims and **GRANTED IN PART** as follows:

(1) Count One is **DISMISSED WITHOUT PREJUDICE** as to Entity Defendants, Supervisor Defendants, Commissioner Defendants, and DPS does;

(2) Count One is **DISMISSED WITH PREJUDICE** against all Jane and John Doe Defendants who allegedly accessed Shambour's records before February 28, 2010;

(3) Counts Two, Three, Four, and Five are **DISMISSED WITH PREJUDICE**;

For the sake of clarity— Count One remains pending against John and Jane Doe Defendants who allegedly accessed Shambour's motor-vehicle records on or after February 28, 2010.

Dated:  August 11, 2014

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge